William J. McGANN

v.

COMPANIA DE NAVEGACIO
MARITIMA NETUMAR.

Civ. No. Y-83-2093.

United States District Court,
D. Maryland.

June 15, 1984.

Raymond J. Cardillo, Baltimore, Md., for plaintiff.

Manfred W. Leckszas, Baltimore, Md., for defendant.

MEMORANDUM

JOSEPH H. YOUNG, District Judge.

William J. McGann, a longshoreman, was injured when he fell while descending the No. 4 escape hatch ladder on the M/V AMALIA at Dundalk Marine Terminal in Baltimore on September 22, 1980. He has sued the shipowner, Compania De Navegacio Maritima Netumar ("Netumar") pursuant to §§ 905(b) and 933 of the Longshoreman's and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901–950 (1976). The case was originally scheduled for a bench trial on March 19, 1984. Just prior to that date, the Court was informed that the parties wished the case to be tried on the basis of a "Trial Record" submitted by them.

The sole issue which the parties ask the Court to resolve at this stage in the proceedings is whether "the absence of a handhold or grab on the underside of the escape hatch trunk cover at the lower tween deck level of the M/V AMALIA'S No. 4 forward escape hatch ladder, which was otherwise admittedly staunch, soundly constructed, in good repair, free from transitory hazards and sufficiently lighted, constitutes the breach of any duty owed by Netumar to William J. McGann, as defined by the U.S. Supreme Court in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156 [101 S.Ct. 1614, 68 L.Ed.2d 1] (1981)." Trial Record at 22.

The parties have stipulated to several facts relating to the AMALIA, a general cargo motor vessel built in Brazil in 1975. The vessel has five hatches, four of which are located forward of the deck house, with the fifth hatch aft of the deck house. Each of the four forward cargo hatches consists of an upper tween deck, a lower tween deck and a lower hold. Access to all three compartments of the No. 4 hatch is had by two escape hatch ladders. The forward one of these is located at the forward corrugated bulkhead. Access to it is had through the masthouse located between hatches 3 and 4. The ladder consists of three sections (weather deck to upper tween deck, upper tween deck to lower tween deck, and lower tween deck to hold), with each section offset to the starboard or port of the center line. The vessel is classed at Lloyd's Register's highest classification, *100A1. Trial Record at 2–3.

The parties have also stipulated that on the day of the accident, September 22, 1980, McGann was working for Ceres Corp. as an extra man in Danny's gang. Pre-Trial Order at 2. In his deposition, McGann states that the accident occurred at approximately 1:00 p.m. when he was returning to the No. 4 hold where his gang had been working in the morning. McGann Deposition at 42, 53. At the time of the accident, he had commenced descending the ladder and had both feet most likely on the fifth rung below the lower tween deck level. At the same time, his hands were holding onto the forward coaming of the access trunk between the two fixed mechanical hinges supporting the cover. In an attempt to find a handhold below the coaming level or the top rung of the ladder, he stuck his left hand underneath the tween deck. *Id.* at 57–60. While reaching with his left hand he let go with his right hand and fell backwards. *Id.* at 61. He does not remember how he lost his footing. *Id.* at 65. As a result of the fall, he claims to have sustained injuries to his low back and his right knee.

Plaintiff admits that the ladder was structurally sound and that he is not aware of any transitory conditions which rendered it unsafe. McGann Deposition at 80–82;

Pre-Trial Order at 1. Rather, he asserts that the hinged steel cover of the escape hatch trunk did not have a grab or handhold welded to its center. Plaintiff claims that he has seen such handholds on the majority of vessels on which he has worked as a longshoreman, and that the handhold can be held onto by someone descending or ascending the ladder when the hatch trunk cover is open. *Id.* at 80–85. He claims that the defendant's liability stems from its failure to provide an adequate, safe means of access from the tween deck to the lower hold. In support of his claims, plaintiff has offered the testimony of Paul J. Trapani, a marine surveyor currently employed by American Marine Services of Maryland, Inc. Trapani stated that the type of ladder in question "poses a particular hazard to persons descending it as described by Mr. McGann ... in that the distance from the after coaming to the ladder approximates the reach of an average sized man." Trial Record at 4. Trapani has never fallen while negotiating ladders similar to those on the AMALIA, but he has suffered a number of mishaps. He admitted that this same type of ladder is found on break-bulk cargo vessels. *Id.*

Defendant contends that the absence of a handhold or a grab on the underside of the escape hatch trunkcover does not constitute a breach of any duty owed by it to longshoremen. In support of its position, defendant has offered the testimony of John A. Bish, ship foreman for the Ceres Corp.; Antonio Marques de Silva Filho, former Chief Officer of the AMALIA; K.V. Cookson, Surveyor-in-Charge at the Baltimore branch of the National Cargo Bureau, Inc.; John F. Luard, a marine surveyor and President of Peter Luard & Co.; and Robert Taggart, a naval architect and marine engineer and President of Robert Taggart, Inc. All of these individuals indicated that the escape hatch ladder in question was typical or standard for cargo vessels such as the AMALIA. Trial Record at 7, 12, 16, 21; de Silva Deposition at 67. Moreover, Cookson stated that in his opinion "this type of ladder can be safely negotiated by any seaman or longshoreman accustomed

to using straight ladders in the course of his work." Trial Record at 12. Luard echoed this statement when he indicated that in his opinion the ladder presented "no unusual hazards for ship's crew or longshoremen using it in performance of their duties." *Id.* at 16. Both Bish and de Silva stated that they had never heard any complaints about the ladder prior to the accident. Moreover, neither was aware of other accidents involving this type of ladder. Trial Record at 7; de Silva Deposition at 60.

Cookson's investigation of the ladder revealed that it had 17 rungs and that the top rung was 3″ below the tween deck plating. Trial Record at 10. The pocket hatch measured 24″ × 24″ and had a coaming 11″ high. *Id.* He also noted that the trunk coaming on the AMALIA was "well suited to serve as a handhold being of considerable height, having a wide rounded edge and leaving ample space between it and the underside of the cover between the hinges to place one's hands." *Id.* at 13. Luard likewise found that there was ample space to obtain "a firm unencumbered handhold." *Id.* at 15. Cookson observed that the vessels where a grab or handhold is on the underside of a trunk cover it may be necessary, depending on the height of the person using the ladder, to shift the hands from the handhold to the ledge of the coaming before actually getting hold of the ladder itself. *Id.* Bish made a similar observation. *Id.* at 8. Moreover, de Silva noted that a handle may be undesirable since an individual could bump his head as he ascended the ladder. de Silva Deposition at 68–69. Bish, however, estimated that approximately 50% of the general cargo vessels coming into Baltimore have grabs or handholds. Trial Record at 7–8.

As the Fourth Circuit has recently observed, under § 905(b) of LHWCA, a shipowner is liable for an injury to a covered person only where the injury is caused by the ship's negligence. *Bonds v. Mortensen and Lange,* 717 F.2d 123 (4th Cir. 1983). The issue confronting this Court is whether the shipowner's failure to provide a handhold or grab constituted negligence. The Supreme Court's opinion in *Scindia*

*Steam Nav. Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) provides guidance in determining the negligence question. According to the Court, the vessel owes the stevedore and longshoremen the duty of exercising due care under the circumstances:

This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work. The shipowner thus has a duty with respect to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations; and if he fails to least to warn the stevedore of hidden danger which would have been known to him in the exercise of reasonable care, he has breached his duty and is liable if his negligence causes injury to a longshoreman.

451 U.S. at 166–67, 101 S.Ct. at 1622. Once cargo operations have begun, the shipowner may rely on the stevedore in the first instance to avoid exposing the longshoremen to unreasonable hazards. *Id.* at 170, 101 S.Ct. at 1623. During cargo operations, the shipowner has no duty to inspect equipment or supervise the stevedore's activities. *Id.* at 168–69, 101 S.Ct. at 1622–23. *See also* 1A Benedict on Admiralty § 94. However, if the shipowner becomes aware of a dangerous condition, known to the stevedore, the shipowner may have a duty to intervene if the stevedore's continued operation is "obviously improvident." 451 U.S. at 167, 175, 101 S.Ct. at 1622, 1626.

In this case, the Court finds no breach of a duty owed by the shipowner to the longshoreman. The defendant has produced evidence that the ladder is typical or standard in cargo vessels such as the AMALIA. While not dispositive on the issue of negligence, such evidence is probative. *Gill v. Hango Ship-Owners/AB*, 682 F.2d 1070 (4th Cir.1982). Moreover, the applicable OSHA regulations envision that a solid coaming located near the head of the ladder can serve as an adequate handhold. *See* 29 C.F.R. § 1918.25 ("An adequate means of gaining a handhold shall be provided at or near the head of each vertical fixed ladder in cases where any coaming or other structural features are such that they cannot serve this purpose"). In this case, testimony demonstrated that the coaming on the AMALIA escape hatch does provide an adequate handhold. Indeed, no other accidents or complaints concerning this type of ladder have been reported to this Court, while defendant has raised at least one reason why additional precautions such as a grasp would be undesirable. Under these circumstances, the shipowner met its duty to provide the ship in a condition such that an experienced stevedore would be able, by the exercise of reasonable care, to carry on its cargo operations with reasonable safety. 451 U.S. at 166–67. In light of this Court's finding that the shipowner met this duty, there is no finding that the stevedore's actions in proceeding to load cargo were "obviously improvident." This Court, therefore, concludes that the shipowner is not liable to plaintiff.