**James R. GILL, Appellant,**

v.

**HANGO SHIP–OWNERS/AB, a Foreign Corporation, Appellee.**

**No. 81–2033.**

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1982.

Decided July 1, 1982.

John V. Murphy, Washington, D. C. (Jerome E. Michaelson, Baltimore, Md., on brief), for appellant.

Warren B. Daly, Jr., Baltimore, Md. (Randall C. Coleman, Ober, Grimes & Shriver, Baltimore, Md., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and JONES,* District Judge.

HARRISON L. WINTER, Chief Judge:

In a suit by a longshoreman against a shipowner alleging actionable negligence, the district court granted judgment for the defendant and plaintiff appeals. We reverse and remand for further proceedings.

* Honorable Shirley B. Jones, United States District Judge for the District of Maryland, sitting

I.

Plaintiff, James R. Gill, brought this action under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, as amended (1972) to recover damages for an injury to his back suffered as a result of an accident on April 12, 1977. We largely repeat the district court's apt summary of the case:

The parties do not dispute how the accident occurred. The M/V HANGETE called at the Port of Baltimore on April 12, 1977 for the purpose of discharging a cargo of rolls of paper. The HANGETE is owned by defendant Hango Ship-Owners/AB and, at the time of the accident, was under a time charter to Swedish Gulf Lines/AB. On that date, plaintiff was working as a longshoreman in the employ of Robert C. Herd and Company, Inc., a stevedoring contractor. Herd had been hired to unload the rolls of paper from the HANGETE. The rolls of paper were loaded on end, with the axes of the rolls aligned vertically. In order to discharge at least the first few rolls of paper, steel breakout clamps owned and maintained by Herd were used. These clamps were fitted over the ends of the rolls of paper by the longshoremen, and the rolls were then lifted out of the vessel's hold by the ship's cranes. The accident involved in the case at bar occurred when a clamp, placed on the end of a roll of paper by plaintiff, slipped off while being hoisted from the vessel's hold. The clamp struck plaintiff, causing the injuries for which plaintiff seeks to recover damages in this action.

In addition to the facts as described by the district court, the parties do not dispute that the rolls of paper were tightly stowed and that this condition was open and apparent. An expert witness for the plaintiff, John D. Marks, whose qualifications as an expert are not in question, made affidavits to the effect that the rolls of paper could

by designation.

not be unloaded without employing tong-like breakout clamps, so that the use of such clamps was inevitable, and that such clamps were inherently dangerous.[1]

Plaintiff contended that these facts presented a jury question as to whether Hango was negligent in packing the paper rolls too tightly, and whether Hango was liable to plaintiff for this negligence because neither the stevedore nor plaintiff could avoid utilizing the inherently dangerous breakout clamp due to the manner in which the paper rolls were stowed.

The district court gave summary judgment for Hango. It held that the shipowner may be liable for injuries incurred by a longshoreman during unloading operations when the danger which has caused the injury is open and obvious if either of two situations are presented. First, by applying the Restatement (Second) of Torts § 343A (1965), the shipowner

> is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Second, relying on *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the district court held that the shipowner may be liable if the ship's gear malfunctions during unloading and the stevedore's decision to continue to use the malfunctioning gear is "so obviously improvident" that "an unreasonable risk of harm to the longshoremen" is created.

Applying these principles, the district court found that Hango should not have anticipated the harm which occurred, apparently on the grounds that (1) the injury

1. The evidence of Mr. Marks was contained in an affidavit made June 5, 1981 and an earlier affidavit made March 1, 1981. In the June 5 affidavit Mr. Marks set forth:

> 2. The rolls of paper that are stowed together tightly in the hold of a paper ship require special handling equipment to initiate their off-loading when the shipowner does not leave enough space between the rolls to use conventional cargo handling slings. In that case the first few rolls of each layer of paper cargo must be extracted from the pack by grabbing the rolls on their upper circumference with tong-like break-out clamps with the clamp arms being inserted in the space between the rolls. To the best of my knowledge there are no other devices available to the Stevedore that can be used to perform this operation. The shipowner of course could leave loading slings on the last few rolls when they are initially loaded aboard the ship or leave sufficient room for the regular slings to be used.
> 3. Given the fact that the rolls are tightly packed and that break-out clamps are being used, longshoremen are required to attach the clamp to the roll. The very fact that the clamps often slip from the rolls requires the longshoremen to constantly be attentive to the roll during the hoisting process and keep close watch or adjust the clamp until the tongs finally take hold. This prevents as a practical matter the longshoremen from leaving the immediate area. Additionally it has been my experience that the working space in a ship's hold is often quite restricted and that often there is not sufficient room for the longshoremen to move a safe distance away. The longshoremen should of course move as far away as possible to minimize the risk of their own injury but the working space in the ship and the need to attend to the break-out clamp do not allow this to be a practical solution to the unsafe condition imposed by using such a break-out clamp.
> 4. To summarize, tight stowage of paper rolls necessitates the use of break-out clamps which are, by their very nature, potentially dangerous to personnel in the vicinity of their use. The crux of the problem is, I believe, the tight packing of the rolls by the shipowner in a foreign port. The shipowner always has the option of leaving out several rolls out of each tier which might represent a small loss of revenue to the carrier but would eliminate potential safety hazard to the longshoremen who must extract the rolls.

In his earlier affidavit of March 1, Mr. Marks had said:

> I can state that the method of using friction type breakout clamps attached only to the top outside diameter of rolls of paper (each weighing approximately 3000 pounds) is inherently dangerous to nearby personnel. This is because an unevenly applied hoisting force or any jerking motion of the lifting equipment can result in a sudden relaxation of the friction grip which in turn can cause the clamp to fly off the roll in a violent, uncontrolled manner. In my considered opinion, this type of friction clamp is the least safe of several different devices that are used to handle rolls of paper, such as the newsprint sling that attaches to a steel rod through the center of the roll, or the stevedoring pallet with a spreader bar and sling.

was so unprecedented that it was not reasonably foreseeable, and (2) the shipowner was entitled to rely on the stevedore to select unloading equipment which would rectify the open and obvious danger posed by the manner in which the cargo was stowed. As to the duty of care set forth in *Scindia*, the district court held that it had not been breached in this case because (1) the malfunctioning gear was provided by the stevedore, not the shipowner, and (2) the stevedore's decision to use the breakout clamps was not "obviously improvident."

Although we agree, in large part, with the district court's description of a shipowner's responsibilities vis-a-vis longshoremen during unloading operations, we do not agree with the conclusion that Hango was not responsible for plaintiff's injury in this case as a matter of law.

## II.

Prior to the 1972 amendments to the Act, a longshoreman injured while unloading a vessel could recover from the shipowner if the injury was caused by the ship's unseaworthiness or negligence. *Scindia*, 451 U.S. at 163–164, 101 S.Ct. at 1619–1620, 68 L.Ed.2d at 10–11. Unseaworthiness of the vessel was proven solely by showing the existence of an unsafe condition on the vessel; the shipowner was liable to the injured longshoreman without proof of fault on its part if that unsafe condition caused or contributed to the longshoreman's injury, and liable even if the unsafe condition was caused or created by the longshoreman's employer, the stevedore. *Id.* at 164, 101 S.Ct. at 1620, 68 L.Ed.2d at 11.

The 1972 amendments abolished the shipowner's liability for unseaworthiness; by the amendments "Congress intended to make the vessel answerable for its own negligence and to terminate its automatic faultless responsibility for conditions caused by the negligence or other defaults of the stevedore." *Id.* at 168, 101 S.Ct. at 1622, 68 L.Ed.2d at 13.

One of the difficulties in applying the amended Act is determining when, if ever, a shipowner's conduct can be characterized as negligent, thus providing a longshoreman with a basis for recovery, even though the stevedore's conduct has also been negligent. Before *Scindia* was decided, the circuits disagreed as to the shipowner's liability in these circumstances. The Courts of Appeals for the Second, Fourth and Fifth Circuits had adopted the approach of the Restatement (Second) of Torts (1965), as set forth in §§ 343 and 343A.[2] According to this view, the longshoreman could be characterized as an invitee, and the shipowner as a possessor of land. Pursuant to § 343A, the shipowner was not liable for harm to longshoremen caused by an open and obvious danger on the ship unless the shipowner "should anticipate the harm despite such" obviousness. Generally, the shipowner should not anticipate harm which results from the stevedore's negligence and, accordingly, is not liable for harm which is the stevedore's duty to prevent. *See, e.g., Gay v. Ocean Transport & Trading, Ltd.,* 546 F.2d 1233, 1238–1239 (5 Cir. 1977); *Anuszewski v. Dynamic Mariners Corp.,* 540 F.2d 757 (4 Cir. 1976), *cert. denied,* 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977).

On the other hand, the First and Third Circuits had rejected the Restatement approach, holding that the shipowner could be negligent and liable to a longshoreman even if the stevedore had also been negligent, at least so long as the stevedore is not in exclusive control of the condition which caused the harm. *See Sarauw v. Oceanic Navigation Corp.,* 622 F.2d 1168, 1172–1173 (3 Cir. 1980), *vacated* 451 U.S. 966, 101 S.Ct. 2039, 68 L.Ed.2d 344 (1981), *aff'd on rehearing,* 655 F.2d 526 (1981). According to this view, the shipowner could be liable if it did not use "reasonable care under the circumstances," and reasonable care could require rectifying conditions caused by the stevedore's negligence.

■ The Supreme Court in *Scindia* did not conclusively adopt or reject either of these views. But it did hold that "reasonable care under the circumstances" does not

2. See cases cited in *Scindia*, 451 U.S. at 162, 101 S.Ct. at 1619, 68 L.Ed.2d at 9 n.9.

mean that an owner owes a duty to inspect and supervise unloading operations. *Scindia*, 451 U.S. at 168, 101 S.Ct. at 1622, 68 L.Ed.2d at 13. However, the owner has a duty to prevent harm that may result from an "obviously improvident" failure of the stevedore to take proper precautions in the face of an obvious and unreasonably dangerous defect, if the owner knows of the defect and of the stevedore's failure to rectify the defect. *Id.* at 174–175, 101 S.Ct. at 1625–1626, 68 L.Ed.2d at 17–18. This duty is the same whether the defect existed prior to or arose during the course of the unloading operations. *Id.* at 175, 101 S.Ct. at 1626, 68 L.Ed.2d at 18.

The standard of care adopted in *Scindia* apparently imposes a greater duty on the shipowner than does the Restatement view. *Compare Scindia*, 451 U.S. at 180, 101 S.Ct. at 1628, 68 L.Ed.2d at 20 (Brennan, J., concurring) *with Scindia*, 451 U.S. at 180, 101 S.Ct. at 1628, 68 L.Ed.2d at 20 (Powell, J., concurring). Consequently, the owner owes a duty of care at least as stringent as that imposed by the Restatement and, in certain circumstances, a greater one.

### III.

The district court correctly concluded, then, that Hango may have been negligent if it should have anticipated harm despite the fact that the risk of harm created by the manner in which the paper rolls were stowed was open and obvious. *See* Restatement (Second) of Torts § 343A. We also agree that negligence under these circumstances would be foreclosed if plaintiff's injury was not a "reasonably foreseeable" consequence of exposure to the risk. However, we do not agree with the district court's finding that plaintiff's injury was not reasonably foreseeable as a matter of law.

■ Negligence is defined as an act or omission which creates an unreasonable risk of harm. Restatement (Second) of Torts § 282 (1965). Generally, the risk of harm is not unreasonable, and the conduct which gives rise to the risk is not negligent, if the injury which results is not reasonably fore-

seeable. *See Whorton v. J. A. Loving & Company*, 344 F.2d 739, 746 (4 Cir. 1965).

But the record discloses a genuine factual dispute as to whether plaintiff's injury was reasonably foreseeable. The district court based its conclusion that the injury was not reasonably foreseeable, as a matter of law, on the evidence that (1) plaintiff had worked for eight years unloading paper rolls with breakout clamps but saw only one accident, other than his own, caused by the slippage of the clamp, and (2) use of the breakout clamp to discharge paper rolls is customary in the industry.

■ However, an accident that is unprecedented or extraordinary is not necessarily unforeseeable. *Kunz v. Utah Power & Light Co.*, 526 F.2d 500, 504 (9 Cir. 1975). Nor is proof of adherence to an industry practice or custom dispositive on the issue of negligence. *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1156–1157 (2 Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979).

Moreover, the affidavits of Marks assert that longshoremen must remain close to the clamp while unloading proceeds, that slippage of the clamp will result from its design, and that the use of the clamp is "inherently dangerous to nearby personnel."

■ Certainly the evidence that breakout clamps were used continually and safely for many years may convince a jury that plaintiff's injury was not reasonably foreseeable. But we think the contrary evidence creates a genuine factual dispute as to the foreseeability of plaintiff's injury and, therefore, that the district court erred in finding that Hango was not negligent because plaintiff's injury was not reasonably foreseeable. *See* Fed.R.Civ.P. 56(c).

■ Nor do we think that it is clear, as a matter of law, that Hango should not have anticipated harm because it was caused by the stevedore's negligence. There is evidence that the manner in which the cargo was stored precluded the stevedore from unloading it by any other means except one which was inherently dangerous. If so, this

is not a case in which the stevedore failed to use reasonable care but, in effect, one in which the shipowner was the only party at fault. In other words, the jury could reasonably find that Hango should have anticipated the harm because the stevedore was unable to remedy the dangerous condition. *See Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505 (2 Cir. 1976).

■ It may be shown at trial that the stevedore was also negligent, in that it could have used a safer unloading device or that the breakout clamp was so unsafe that the stevedore should have refused to unload the cargo with it. But even if the stevedore was also negligent, Hango's liability is not foreclosed if the stevedore's decision to unload with the clamps was "obviously improvident." The district court concluded that the stevedore's decision to use the breakout clamp could not be so characterized. But it seems to us that the evidence is sufficient to establish a jury issue as to whether the breakout clamp was so unsafe that the stevedore should have ceased using it, if no alternative device was available, and, therefore, a jury issue as to whether Hango should have intervened to stop the loading operation until it could be done with reasonable safety. *See Scindia*, 451 U.S. at 178, 101 S.Ct. at 1627, 68 L.Ed.2d at 19.

Because we conclude that on this record it cannot be said that Hango was not negligent as a matter of law, the judgment of the district court must be vacated and the case remanded for further proceedings.

REVERSED AND REMANDED.