Henry P. BUENO, Plaintiff-Appellant,

v.

UNITED STATES of America; R. W. Little Co., Inc., a California Corporation; and San Diego Sandblasting, Inc., a California Corporation, Defendants-Appellees.

No. 81–5802.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 7, 1982.

Decided Sept. 16, 1982.

As Amended on Denial of Rehearing
and Rehearing En Banc
Feb. 15, 1983.

Donald M. DeCamara, La Mesa, Cal., for plaintiff-appellant.

Donald F. Shanahan, San Diego, Cal., argued, for defendants-appellees; George Haydon, Gregg C. Sindici, Higgs, Fletcher & Mack, San Diego, Cal., on brief.

Before FLETCHER, PREGERSON and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Henry Bueno, the plaintiff, worked for San Diego Sandblasting Inc. (San Diego). In 1979, San Diego and R. W. Little Co. (Little) jointly contracted with the government to provide sandblasting services at the Naval Station in Long Beach, California. Bueno was assigned to work on a vessel,

YFD–71, owned by the United States. On August 9, 1979, the day shift employees of Little and San Diego discovered a fire in the hold of YFD–71. Mr. Fredrickson, the foreman of Little, entered the hold to determine the cause of the fire. He discovered that some planks used in the scaffolding were smoldering. Upon leaving the hold he ordered Bueno to get respirators to protect against the smoke. Fredrickson and the other employees waited outside the hold for the smoke to clear. After an approximately ten minute wait, the workers were able to re-enter the hold to remove the smoldering boards.

Bueno re-entered the hold after the planks had been removed. He fell through the space left open after the removal of the scaffolding. As a result of the accident, Bueno suffered a severe concussion and a badly broken hand. He has been unable to return to his job as a sandblaster.

The fire which led to Bueno's injuries was caused by San Diego's floodlight. Plaintiff's theory was that San Diego was negligent in the design and placement of the floodlight, and that the United States was negligent in failing to remedy the dangerous situation.

Bueno filed a claim for benefits under the Longshoremen's and Harbor Worker's Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.* These benefits were paid by San Diego's insurance carrier. Bueno then filed a negligence suit in admiralty against San Diego, Little and the United States. The court granted summary judgment in favor of Little and San Diego, on the basis that San Diego was not a manufacturer, and Little was involved in a joint venture with San Diego, so that Bueno's exclusive remedy was under the LHWCA. The court also granted summary judgment in favor of the United States, holding that the United States, as the owner of the vessel, owed Bueno no duty of care. Bueno appeals the district court's judgment.

The summary judgment is affirmed with respect to San Diego, but reversed with respect to Little and the United States, because there are genuine issues of material fact involving the liability of both Little and the United States.

Since the case was decided on a summary judgment, the overriding question is whether or not there are genuine issues of material fact. There are, however, two subsidiary issues.[1]

1. Did the United States, as vessel owner, owe Bueno a duty of care?
2. Is Little freed from liability as a member of a "joint venture" with San Diego?

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted only if it is shown "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

The question whether there are disputed issues of material fact must be viewed in the light most advantageous to the party opposing the motion for summary judgment. *United States v. First National Bank of Circle*, 652 F.2d 882, 887 (9th Cir. 1981).

I. DID THE UNITED STATES, AS VESSEL OWNER, OWE BUENO A DUTY OF CARE?

The government argues that even when the facts are put in the light most favorable to Bueno, the government is entitled to a judgment as a matter of law. The government argues for the proposition that except where there are contract provisions or custom to the contrary, the vessel does not owe a duty of care to the longshoreman, even when the government has retained the right to inspect the premises and to call off work if federal regulations are not met.

The government supports its position solely by relying on language in *Scindia*

---

**1.** Plaintiff conceded at oral argument that, in the light of a recent California case dealing with the "dual capacity" exception, the sum-

mary judgment in favor of the employer, San Diego, should be affirmed.

*Steam Navigation v. De Los Santos*, 451 U.S. 156, 172, 101 S.Ct. 1614, 1624, 68 L.Ed.2d 1 (1981):

> We are of the view that absent contract provision, positive law, or custom to the contrary—none of which has been cited to us in this case—the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of the cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself. This conclusion is plainly consistent with the congressional intent to foreclose the faultless liability of the shipowner based on a theory of unseaworthiness or nondelegable duty.

The government then argues that in this case there is no contractual or custom exception. Plaintiff accepts the government's sweeping interpretation of *Scindia*, and tries to show that there was a contractual exception in the instant case.

We do not have to reach this issue, however, because it is unnecessary to find a contractual duty of inspection in order to impose liability on the government. *Scindia* does not obliterate all duty of care on the part of the vessel owner. As the Senate Report quoted in *Scindia* makes clear, nothing in the 1972 Amendments to LHWCA " 'is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition.' " *Scindia*, 451 U.S. at 169 n.16, 101 S.Ct. at 1623 n.16 (quoting S.Rep.No.92–1125, 92d Cong., 2d Sess. 10 (1972).

█ The critical allegations made by the plaintiff in this case are that the Government voluntarily undertook to check the safety of the vessel on a regular basis, making inspections from time to time, while the sandblasting operation was in progress, and that the danger continued throughout the course of the sandblasting. Upon defendants' motion for summary judgment, the plaintiff supported these allegations with specific citations to depositions contained in the record. The issue, therefore, was not whether the vessel owner had a continuing duty to inspect the longshoremen's operations, but whether, in the course of its regular inspection activities, the shipowner should have noticed the serious danger and intervened to correct it.

█ It is undisputed that San Diego's floodlight caused the fire that led to the appellant's injury. It is also undisputed that the floodlight was designed so that the naked bulb came in close proximity to the wood surface upon which the floodlight was placed. Yet just because San Diego was negligent in the construction of the floodlight and in its use during the sandblasting operations, this does not mean that the United States could not also have been negligent in its failure to remedy the dangerous situation created by San Diego's use of defective floodlights or the particularly hazardous situations created by the improper placement on the night of the fire. San Diego used the floodlights that plaintiff contends were unsafe over a period of several weeks. It is certainly possible for both the stevedore and the vessel owner to be negligent. *See Davis v. Partenreederei M.S. Normannia*, 657 F.2d 1048, 1050–51 (9th Cir. 1981).

The floodlight that caused the fire was left face down on the scaffold by the contractor's night crew. The night crew went off duty at 2:00 a. m. The fire was discovered early the next morning. Thus, a highly dangerous condition existed on the vessel for a period of five hours. Congress made clear that when conditions are obviously dangerous, constructive knowledge on the part of the shipowner can be inferred, even where actual knowledge cannot be shown. *See* H.R.Rep.No.92–1441, 92 Cong., 2d Sess. 10 (1972); S.Rep.No. 92–1125, 92d Cong., 2d Sess. 11 (1972), U.S.Code Cong. & Admin. News 1972, p. 4698 (Shipowner would be liable where oil spill "had been on the deck

for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances").

Certainly, then, there is a material question as to whether, in light of the circumstances in this case, the shipowner took due care to protect the contractors.

## II. IS LITTLE IMMUNE FROM LIABILITY BECAUSE OF PARTICIPATION IN A JOINT VENTURE WITH SAN DIEGO?

 Little argues that as a joint venturer with San Diego it is immune from tort liability to San Diego's employee. Little cites *Haas v. 653 Leasing Company*, 425 F.Supp. 1305 (E.D.Pa.1977) (suit against employer's joint ventures barred by LHWCA), in support of its position. However, there is persuasive authority that the mere existence of a joint venture does not in and of itself bar an action against one of the venturers by an employee of the other. *See Abbott v. United States*, 207 F.Supp. 468, 474–76 (S.D.N.Y.1962). The real question is whether, because of its alleged joint venture with San Diego, Little is Bueno's "employer" under the LHWCA and thus immune from tort liability under the Act. *See* 33 U.S.C. § 902(4). On this question, there are remaining unresolved issues of material fact. The trier of fact must ascertain and weigh the significance of such factors as whose payroll Bueno was on, who paid his LHWCA contributions, who gave him orders. The mere fact that there may have been a joint venture cannot resolve the issue of Little's negligence liability to Bueno. The summary judgment in favor of Little was therefore inappropriate and must be reversed.

## CONCLUSION

Under *Scindia*, the United States, as vessel owner, owed a duty of care to Bueno. Because there are genuine issues of material fact as to whether the United States breached that duty, summary judgment in favor of the United States was inappropriate. Similarly, because there are genuine issues of material fact concerning Bueno's employment relationship with Little, summary judgment in favor of Little was inappropriate. In these respects, therefore, the judgment of the district court is reversed. The summary judgment in favor of San Diego is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.