**Gilbert OLLESTAD, Plaintiff-Appellee,**

v.

**GREENVILLE STEAMSHIP CORP., and Tokyo Shipping Co., Ltd., Defendants-Appellants.**

**No. 83–3565.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 1983.

Decided July 25, 1984.

Richard Smith, Anchorage, Alaska, for plaintiff-appellee.

Ronald Bliss, Bradbury, Bliss & Riordan, Anchorage, Alaska, for defendants-appellants.

Before WRIGHT, ANDERSON and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Defendants Greenville Steamship and Tokyo Shipping ("Greenville") appeal from a judgment awarding Ollestad damages for an injury he sustained while climbing over a boomrest that was blocking a passageway on Greenville's ship. Greenville complains that the trial court erred in instructing the jury on the shipowner's duty of care to longshoremen. We affirm.

## FACTS

Ollestad was a member of a longshore gang engaged to load lumber on Greenville's ship, the Greenfield. Before the longshoremen came on board, the ship's crew uncovered the hatches and stacked the hatch covers on the weather deck, a job normally performed by longshoremen. They also left a boomrest, a large triangular metal structure used to support the boom when not in use, lying on the deck. The arrangement of the hatchcovers and boomrest was such that anyone crossing the weather deck had either to climb over the hatchcovers or boomrest or slide under the boomrest to get by.

The longshoremen used the weather deck to get to and from their work areas on the ship. During the course of the day, snow and ice had built up in the area, making it rather slippery. Ollestad crossed the weather deck several times during his morning's work, each time climbing over the objects obstructing the passageway. At about midday, when returning to his work station after a break, Ollestad stepped up on the boomrest, slipped, and fell, injuring his leg.

Ollestad brought this action in district court, alleging that the shipowners were negligent both in positioning the hatchcovers in a manner that left inadequate passageway, and in allowing the boomrest to obstruct that passageway. The defendant shipowners denied that they were negligent or that their negligence was the proximate cause of Ollestad's injury, and alleged, as an affirmative defense, that Ollestad's own negligence was the actual proximate cause of the injury.

Over Greenville's objection, the trial court gave the jury the following instructions on the shipowner's liability:

A shipowner has no duty to inspect or to supervise cargo loading or unloading operations under the direction of a stevedore company, since it is by law the responsibility of the stevedore to provide longshoremen with a reasonably safe place to work, reasonably safe equipment and safe working conditions.

*A shipowner is liable to longshoremen for injuries caused by an unreasonable risk created by him or known by him or which should have been known by him which existed at the time*

*the vessel was turned over to the stevedore* for cargo operations. A shipowner is also liable to longshoremen for injuries caused by an unreasonable risk of harm existing within work areas remaining under the direct control of the shipowner, or by reason of a danger creating an unreasonable risk of harm which was known to the shipowner which the shipowner could not reasonably assume would be remedied by the stevedore but was within the power and control of the shipowner to remedy.

*In your consideration of whether a danger creating an unreasonable risk of harm to longshoremen existed at the time the shipowner turned over the vessel GREENFIELD to the stevedore for cargo loading or unloading operations, you may consider the following regulation* as evidence along with all the other evidence on plaintiff's claims of negligence.

"Dunnage, hatch beams, tarpaulins, or gear not in use shall be stowed no closer than 3 feet to the port and starboard sides of the weather deck hatch coaming, except that a reasonable tolerance shall be permitted where strict adherence is rendered impracticable due to the circumstances."

(emphasis added) (quoting 29 C.F.R. § 1918.91(g) (1982)). The trial court rejected Greenville's proposed instruction, which read in part:

If you find that the hazardous condition was open and obvious, and that it existed before control of the ship was handed over to the stevedore, the defendants had a duty to remedy the condition only if they had a reasonable belief that the stevedore would not remedy the hazard, and that the condition presented an unreasonable risk of harm to the plaintiff.

The jury found the shipowner negligent in creating the conditions on the weather deck, and the district court entered judgment for Ollestad.

Greenville contends the instructions were erroneous, first, in that they misstated the conditions under which an owner may be liable, and second, in that an owner has no duty to comply with OSHA longshoring regulations.

## ANALYSIS

Greenville contends that the court erred in instructing the jury that a shipowner is liable merely because it created or knew of a dangerous condition before it turned over the ship to the stevedore. Greenville argues that where the danger is an obvious one the owner may rely on the stevedore to make the working conditions safe, and is liable only if it should have known the stevedore would not (or could not) remedy the condition. Several cases have held that a shipowner can be liable for injuries caused by non-obvious hazards it knows or should know about that exist when the ship is turned over to the stevedore. *See Subingsubing v. Reardon Smith Line, Ltd.,* 682 F.2d 779, 782 (9th Cir.1982); *Lemon v. Bank Lines, Ltd.,* 656 F.2d 110 (5th Cir. 1981); *Turner v. Japan Lines, Ltd.,* 651 F.2d 1300, 1304 (9th Cir.1981), *cert. denied,* 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982), *amended,* 702 F.2d 752 (9th Cir. 1983). Greenville argues, however, that where the hazard is obvious the shipowner should be able to rely on the stevedore to remedy it.

Greenville relies mainly on language from *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). In *Scindia,* the Supreme Court rejected the contention that the shipowner has a duty to inspect for dangerous conditions that develop during cargo operations assigned to the stevedore. The Court went on to answer the question, "What are the shipowner's duties when he learns that an apparently dangerous condition exists or has developed in the cargo operation, which is known to the stevedore and which may cause injury to the longshoremen?" 451 U.S. at 172–73, 101 S.Ct. at 1625. The Court concluded that the shipowner was entitled to rely to some extent on the stevedore's expert judgment, but that it had a duty to intervene if the

stevedore's judgment was "obviously improvident" and the owner knew the stevedore was continuing to operate under the dangerous condition. 451 U.S. at 175–76, 101 S.Ct. at 1626–1627. The Court pointed out that "[t]he same would be true if the defect existed from the outset and [the owner] must be deemed to have been aware of its condition." 451 U.S. at 176, 101 S.Ct. at 1626. Greenville interprets this to mean that the owner may rely on the stevedore to remedy all obvious hazards existing on the ship at the time it is turned over to the longshoremen, regardless of how the hazard was created.[1]

This court has interpreted *Scindia* as supporting the principle that "the shipowner has a reasonable duty of care to warn of defects and make conditions safe," with the limitation that " 'the shipowner's duty of reasonable care under the circumstances does not impose a continuing duty to inspect the cargo operations once the stevedore begins its work.' " *Davis v. Partenreederei M.S. Normannia*, 657 F.2d 1048, 1052 (9th Cir.1981) (quoting *Scindia*, 451 U.S. at 163 n. 10, 101 S.Ct. at 1620 n. 10). This is not a case like *Scindia*, where the shipowner's alleged negligence arose out of its conduct after longshore operations had begun. Rather, we are concerned in this case with the shipowner's duty of care to make the ship safe for longshoremen before turning the ship over to the stevedore.

■■■ Our court has not decided whether the shipowner's knowledge or creation of an obvious dangerous condition that exists at the time the ship is turned over to longshoremen is, without more, sufficient to establish liability.[2] Nor do we decide it here since the instruction was proper in any event in light of the uncontested facts of this case. The "risk" referred to in the challenged instruction was the obstruction of the weather deck caused by the position of the hatchcovers and boomrest. This risk was undisputedly created by the ship in the course of doing work normally done by longshoremen. In doing such work, the ship's crew had the duty to exercise the same reasonable care required of a stevedore to protect workers who would be continuing longshore operations on board. *Cf. Bueno v. United States*, 687 F.2d 318, 320 (9th Cir.1983) (owner that undertook inspection of vessel during longshore operations had duty to use reasonable care to remedy dangerous conditions it observed).

■■■ We also conclude that the court did not err in instructing the jury that it could consider OSHA regulations in determining whether the condition of the deck created an unreasonable risk of harm. Although the regulations impose an express duty only on stevedores, "there is no reason to suppose that it is an exclusive duty." *Subingsubing v. Reardon Smith Line*, 682 F.2d at 780. The regulations provide that they do not relieve "owners, operators, agents or masters of vessels from responsibilities now placed upon them by law, regulation, or custom." 29 C.F.R. § 1918.2(a). The court did not instruct the jury that the

**1.** Greenville also relies on the Second Circuit's decision in *Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848 (2d Cir.1981). *Evans* held that "a vessel is not liable for injuries resulting from known or obvious dangers unless the shipowner should anticipate the harm despite the obviousness of the danger," 639 F.2d at 855, that is, unless the owner should anticipate that the stevedore would not remedy it. *Evans*, however, was decided before *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The Supreme Court expressed agreement with much of the reasoning of *Evans*, but said "we are presently unprepared to agree that the shipowner has precisely the duty described by the Court of Appeals for the Second Circuit." 451 U.S. at 175, 101 S.Ct. at 1626.

**2.** *See, e.g., Turner v. Japan Lines*, 651 F.2d at 1304–05 (evidence sufficient to establish shipowner's liability to longshoremen unloading cargo where crew should have known of dangerous, non-obvious condition created by foreign stevedore during loading); *Davis v. Partenreederei M.S. Normannia*, 657 F.2d at 1052–53 (evidence sufficient to establish shipowner's liability where ship's crew had placed gangway in a dangerous position, had a continuing responsibility to correct its position, and was aware of the danger); *Subingsubing v. Reardon Smith Line*, 682 F.2d at 782 (shipowner has duty of reasonable care to remove non-obvious tripping hazard before longshoremen come aboard).

regulations imposed a duty on the owner that would not otherwise exist. *Cf. Bandeen v. United Carriers (Panama), Inc.,* 712 F.2d 1336 (9th Cir.1983) (OSHA regulations requiring safety appliances did not impose duty on owner to provide them). Rather, it simply told them that the regulations could be considered as evidence, along with other evidence, in deciding whether the ship's condition created an unreasonable risk of harm to longshoremen. Where a ship undertakes work normally performed by longshoremen, OSHA standards regulating such work are relevant to the jury's consideration of whether the ship owner exercised reasonable care.

The judgment of the district court is AFFIRMED.