Armando **MARTINEZ,**
Plaintiff–Appellant,

v.

**KOREA SHIPPING CORP., LTD.;**
**Hyundai Heavy Industries**
**Company, Ltd., Defendants–Appellees.**

No. 88–6460.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 4, 1989.

Decided Feb. 22, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc June 7, 1990.

---

Preston Easley, Law Offices of Preston Easley, San Pedro, Cal., for plaintiff-appellant.

Forrest R. Cogswell and Michael Reese Davis, Williams, Woolley, Cogswell, Nakazawa and Russell, Long Beach, Cal., for defendants-appellees.

Before GOODWIN, Chief Judge, SCHROEDER and BEEZER, Circuit Judges.

GOODWIN, Chief Judge:

Armando Martinez, an injured longshoreman, appeals a grant of summary judgment in favor of defendant ship owner. Martinez alleges that Korea Shipping Corporation (KSC) negligently provided an unreasonably dangerous vessel for cargo loading and is therefore liable for injuries Martinez sustained while working on board the vessel. Finding that KSC met its duty of care to Martinez, the district court granted KSC's motion for summary judgment. We affirm in part, reverse in part, and remand for further proceedings.

Martinez is a longshoreman employed by Marine Terminals Corporation, a stevedoring company contracted by KSC to load and unload cargo containers on board their vessel the KOREAN WONIS SEVEN (the vessel). Martinez's duties entail installing and releasing lashing bars and turnbuckles that secure cargo containers to the vessel. The vessel is owned and operated by KSC and was manufactured by Hyundai Heavy Industries Company, Ltd.

Martinez sustained serious back injuries when he fell through an unguarded ladder opening on a lashing platform six feet above the deck. The ladder ascends between a catwalk and a lashing platform into a three foot by three foot circular opening. The opening is neither covered nor surrounded by a guard rail. The accident occurred when, after unlashing the

last container on the platform, Martinez turned toward the catwalk to put the removed lashing bar down. The bar was six to ten feet long and Martinez was maneuvering it from a vertical to horizontal position as he walked. While turning and stepping, Martinez failed to notice the ladder opening and fell through it.

Martinez collected his statutory compensation through his employer and then sued KSC claiming that the unguarded ladder opening created an unreasonably dangerous condition that could not be corrected by the longshoremen. He alleged that KSC was liable under the theories of negligence, products liability and breach of express and implied warranties of fitness and merchantability.

KSC moved for summary judgment and the district court granted the motion. The court found that KSC complied with the relevant shipowner duties and that the exclusive duty to take any necessary safety precautions fell on the stevedore. The court also found that the lashing platform was reasonably safe for longshoremen to work and that Martinez could not maintain a products liability suit against KSC.

Summary judgment may be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no "genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Martinez does not dispute that a products liability suit is untenable against KSC.[1] Rather, he argues that KSC was negligent for failing to provide a reasonably safe working environment. Specifically, he argues that material questions of fact must be resolved by a jury before KSC's compliance with its duties as a vessel owner can be adjudged.

Both parties agree that the Supreme Court's decision in *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S.

156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) provides the legal and analytic framework for this case. In *Scindia*, the Supreme Court articulated three general principles to govern the duties of vessel owners towards longshoremen. 451 U.S. at 166–79, 101 S.Ct. at 1621–28. First, before turning the ship over to the stevedore, a vessel owner must "exercise ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety." *Id.* at 167, 101 S.Ct. at 1622. The vessel owner must also warn the stevedore of hidden unsafe conditions on the vessel of which the owner is, or should be, aware. *Id.*

Second, once the stevedore has begun its work, the shipowner has no duty to inspect equipment or supervise the longshoremen unless contract provisions, regulations or custom dictate to the contrary. The vessel owner is not obligated to monitor the stevedore's operation; rather the owner is entitled to rely on the experience and reasonableness of the workers. *Id.* at 172, 101 S.Ct. at 1624.

Third, an exception exists to the general absence of vessel owner duty to protect longshoremen. If after the vessel is turned over to the stevedore the owner becomes aware that the ship's gear is malfunctioning, a risk of harm exists, and the stevedore, as a result of "obvious improvident" judgment, has failed to protect the workers against the danger, then the owner is under a duty to intervene in the stevedore's operation and remedy the dangerous condition. *Id.* at 175–76, 101 S.Ct. at 1626–27.

Martinez asserts that KSC violated all three aspects of its duty. Specifically, he claims that (1) KSC failed to turn the vessel

**1.** Martinez claims that his suit is for negligence and not unseaworthiness. We held in *Bilderbeck v. World Wide Shipping Agency*, 776 F.2d 817 (9th Cir.1985), that to defend a summary judgment motion, the injured longshoreman must specifically allege negligent conduct; otherwise it is "simply another attempt to get sea-

worthiness into the case in the face of a clear Congressional intent to remove it." *Id.* 776 F.2d at 819. *See also Wilhelm v. Assoc. Container Transp. (Australia) Ltd.,* 648 F.2d 1197, 1198 (9th Cir.1981) (longshoremen cannot maintain an action in strict products liability against a vessel owner).

over to Marine Terminals Corporation in a reasonably safe condition; (2) KSC violated its contractual obligations under a collective bargaining agreement and its duties under the Pacific Coast Marine Safety Code; and (3) KSC should have intervened to protect Martinez and his co-workers from the unsafe lashing platform. We find that material issues of fact exist with regard to the first contention, but agree with the district court that, as a matter of law, the remainder of Martinez's contentions lack merit.

## A. DUTY TO TURN THE VESSEL OVER IN A REASONABLY SAFE CONDITION

■ In *Scindia,* the Supreme Court distinguished a negligence claim from a strict liability cause of action for unseaworthiness. Prior to 1972, if a longshoreman was injured as a result of a vessel's unseaworthiness, he could receive compensation from his employer (the stevedore) as well as damages from the vessel owner. If the unsafe condition rendered the vessel unseaworthy, vessel owner liability was strict and required no evidence of fault. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 90, 66 S.Ct. 872, 875, 90 L.Ed. 1099, *reh'g denied,* 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646 (1946). *See generally* Benedict On Admiralty § 91, 5–2—5–4 (7th ed. 1988). In 1972, Congress amended the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950, to foreclose a cause of action for unseaworthiness. *See Scindia,* 451 U.S. at 165, 101 S.Ct. at 1621. The 1972 amendments to the LHWCA abolished this cause of action, leaving only a statutory negligence action. *See* 33 U.S.C. § 905(b).

While the *Scindia* Court defined a shipowner's duty of care under the amended LHWCA, it did not address directly whether a court or a jury should decide whether the shipowner breached its duty. It is sometimes said that a determination of negligence is a mixed question of law and fact. *Barnett v. Sea Land Service, Inc.,* 875 F.2d 741, 745 (9th Cir.1989); *Miller v. United States,* 587 F.2d 991, 994 (9th Cir. 1978). The existence and extent of a duty of care are questions of law, but proximate cause and whether such a duty has been breached are questions of fact. *Armstrong v. United States,* 756 F.2d 1407, 1409 (9th Cir.1985). Summary judgment is rarely granted in negligence cases. Whether the defendant acted reasonably is ordinarily a question for the trier of fact: *See* Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 2729 (2d ed. 1983); *see also Bueno v. United States,* 687 F.2d 318 (9th Cir.1982) (grant of summary judgment to vessel owner reversed). *Cf. Lies v. Farrell Lines, Inc.,* 641 F.2d 765, 770 (9th Cir.1981) ("Courts should exercise special care in considering summary judgment in Jones Act cases which require a very low threshold for submission to the jury.").

In this case the district court decided as a matter of law that KSC did not breach its duty. Viewing the evidence in the light most favorable to Martinez, however, we find that a material question of fact is whether an obvious situation—an unguarded ladder opening—constitutes an unreasonably dangerous condition to expert and experienced stevedores. If so KSC could be found negligent in turning the ship over to the stevedore for cargo operations. *Scindia,* 451 U.S. at 167, 101 S.Ct. at 1622.

The parties themselves dispute whether the unguarded ladder opening on the lashing platform constitutes an unreasonably dangerous condition. Martinez contends that the ladder opening was unsafe and dangerous to the stevedore. He presented affidavits from a naval architect and a marine engineer who both agree that the vessel is unsafe. Photographs of other vessels that have guardrails around the ladder openings were also submitted.

KSC, on the other hand, submitted the affidavits of a licensed ship master and a naval architect, who claimed that the platform is standard in the industry and meets international requirements. KSC also offered evidence that during the vessel's seven years of operation no longshoreman ever fell into one of the ladder openings on the lashing platforms and no complaints were lodged concerning the platforms.

On the basis of KSC's evidence, the district court found that KSC met its duty to provide a reasonably safe ship to an expert and experienced stevedore; an accident was not reasonably foreseeable. An accident that is unprecedented or extraordinary is not necessarily reasonable, however. *Gill v. Hango Ship–Owners/AB*, 682 F.2d 1070, 1074 (4th Cir.1982); *Kunz v. Utah Power & Light Co.*, 526 F.2d 500, 504 (9th Cir.1975). Likewise, proof of adherence to an industry practice or custom is not dispositive on the issue of negligence. *Gill*, 682 F.2d at 1074, *citing Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1156–57 (2nd. Cir.1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979).

The fact that the ladder opening was obvious to Martinez and other longshoremen working on board the vessel, moreover, does not necessarily preclude a finding of shipowner negligence. While we have recognized that a shipowner is not under an absolute duty to provide a perfectly safe vessel, *Bilderbeck*, 776 F.2d at 818 ("there is no warranty ... running to the workman, that the vessel is free from defect."), this court has left open the question "whether the shipowner's knowledge or creation of an obvious dangerous condition that exists at the time the ship is turned over to longshoremen is without more, sufficient to establish liability." *Ollestad v. Greenville Steamship Corp.*, 738 F.2d 1049 (9th Cir.1984), *cert. denied*, 469 U.S. 1197, 105 S.Ct. 982, 83 L.Ed.2d 984 (1985).[2]

Under *Scindia*, the obviousness of the defect does not absolve the vessel owner of its duty to turn over the ship in a condition under which expert and experience stevedores can operate safely. 451 U.S. at 167, 101 S.Ct. at 1622. In addition, Congress made clear in the 1979 amendments that when conditions are obviously dangerous actual knowledge by the vessel owner is not necessary and constructive knowledge can be implied. *See* H.R.Rep. No. 92–1441, 92 Cong., 2d Sess. 10 (1972); S.Rep. No. 92–1125, 92d Cong., 2d Sess. 11 (1972), reprinted in U.S.Code Cong. & Admin.News 1972, 4698; *Bueno*, 687 F.2d at 320. In this case, we believe that reasonable jurors could differ on whether the ladder opening, although obvious, presented an unreasonably dangerous work environment to experienced longshoremen exercising reasonable care[3] that KSC should have been aware of when it turned the vessel over to the stevedore for cargo operations.

KSC contends that it was the exclusive duty of the stevedore to take safety precautions even if the ladder opening did present unreasonably dangerous working conditions. KSC relies on our decision in *Bandeen v. United Carriers (Panama), Inc.*, 712 F.2d 1336 (9th Cir.1983) to support this proposition. *Bandeen*, however, did not hold that the duty to take safety precautions fell exclusively on the stevedore to prevent accidents *caused by design defects*. In *Bandeen*, this court held that the vessel owner was not liable for failing to provide rigging between stanchions which could have prevented a worker from falling overboard. 712 F.2d at 1340. The injury occurred because the bark on a log Bandeen was standing on gave way and his fall was not broken by safety nets below.

---

**2.** Several cases have found liability for non-obvious hazards or latent defects that the owner knew or should have known about when the ship was given to the stevedore. *Ollestad*, 738 F.2d at 1049. *See, e.g., Subingsubing v. Reardon Smith Line, Ltd.*, 682 F.2d 779, 782 (9th Cir. 1982) (dangerous non-obvious tripping hazards); *Turner v. Japan Lines, Ltd.*, 651 F.2d 1300, 1304 (9th Cir.1981), *cert. denied*, 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982), *amended by*, 702 F.2d 752 (9th Cir 1983) (dangerous, non-obvious condition created by foreign stevedore while loading vessel).

**3.** Whether Martinez was exercising reasonable care is also an issue for the jury. This court has not found owners liable for obvious situations that longshoremen should appreciate. *See, e.g., Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204 (9th Cir.1989) (no liability where longshoreman fell onto deck as he attempted to descend from hatch cover down a coaming ladder when evidence revealed that expert and experienced stevedore could have safely conducted cargo operations by directing movement of a crane); *Taylor v. Moram Agencies*, 739 F.2d 1384 (9th Cir.1984) (no liability for loose beans on winch platform causing longshoreman to fall).

The court attributed the accident to the failure to provide safety nets and not on any design defect of the ship. *Id.* at 1338. In this case, the existence of a ladder opening on a lashing platform, however, caused the fall.

Moreover, in *Ollestad,* this court held that it is proper for a jury to consider Occupational Safety and Health Administration (OSHA) Regulations in deciding whether the vessel's condition created an unreasonable risk of harm to the workers. *Ollestad,* 738 F.2d at 1053 (1984). Although OSHA standards only impose a duty on stevedores, this court has held that it is not an exclusive duty.[4] *Subingsubing,* 682 F.2d at 780.

In a case dealing with the vessel owners duty to intervene and correct dangerous conditions under *Scindia,* this court held that while the stevedore was directly responsible for violating OSHA regulations, a vessel owner could also be liable for resulting injuries to longshoremen if a jury found that the vessel owner should have intervened to remedy the situation. *Davis v. Partenreederei M.S. Normannia,* 657 F.2d 1048, 1052 (9th Cir.1981). Likewise, it is possible for both the stevedore and the vessel owner to be negligent. *Bueno,* 687 F.2d at 320; *Davis,* 657 F.2d at 1050–51. In this instance, therefore, KSC cannot be absolved of liability solely on the basis that Marine Terminals Corporation did not put guardrails around or a cover over the ladder opening.

The jury must decide if turning over the vessel to Marine Terminals Corporation with an unguarded or uncovered ladder opening on the lashing platform created an unreasonable hazard to expert and experienced longshoremen working with reasonable care on the lashing platform.

## B. CONTRACTUAL DUTIES

██ Martinez argues that KSC was required by a collective bargaining agree- ment to provide railing around the ladder opening. The collective bargaining agreement requires KSC to abide by the Pacific Marine Safety Code which provides "manholes and other deck openings which are flush with the deck shall be barricaded by use of either coverings or railings." The district court correctly interpreted this provision as not applying to the lashing platform ladder opening at issue here. The plain terms of the contract specifically require guard rails on openings on the deck and do not apply to small scaffoldings that hover above the deck.

## C. DUTY TO INTERVENE

██ Martinez also claims that KSC had a duty to intervene when it became aware that the longshoremen were working on the allegedly unsafe lashing platform. A vessel owner's duty to intervene arises only when the unsafe condition develops or becomes obvious after the vessel is turned over to the stevedore. *See Bueno,* 687 F.2d 318 (owner that undertook inspection of vessel during stevedore operations had a duty to remedy dangerous condition of scaffolding after fire in the area); *Davis,* 657 F.2d 1048 (when shipowner realized that use of uniquely designed gangway became hazardous a duty to intervene attached). In this case, the alleged unsafe condition of the ladder opening did not develop during cargo operations; it was either safe or unsafe at the time the cargo operations began. Thus, even if the jury finds that the lashing platform was unreasonably unsafe, the duty to correct the condition existed at the time the vessel was turned over to Marine Terminals Corporation.

We therefore REVERSE and REMAND for the jury to determine whether the unguarded and uncovered ladder opening on the lashing platform created an unreasonable hazard to expert and experienced long-

---

4. OSHA standards require covering or guardrails to protect workers from openings on decks. 19 C.F.R. § 1915.73(b) states that: "When employees are working in the vicinity of flush manholes and other small openings of comparable size in the deck and *other working surfaces,* such openings shall be suitably covered or guarded to a height of not less than 30 inches, except where the use of such guards is made impracticable by the work actually in progress." 19 C.F.R. § 1915.73(b) (1988) (emphasis added).

shoremen working with reasonable care on the lashing platform. We AFFIRM the grant of summary judgment on Martinez's remaining claims.

AFFIRMED in part, REVERSED in part, and REMANDED.