954 F.2d 727
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Richard GODFREY, Plaintiff-Appellant,
v.
M/V BARONIA; Hyundai Merchant Marine Corporation,
Defendants-Appellees.
 No. 91-55146.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 6, 1992.*
Decided Feb. 12, 1992.
 
 Before BRUNETTI, O'SCANNLAIN and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Richard Godfrey, the appellant, sued the M/V Baronia and its charterer, Hyundai Merchant Marine Co., under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950. Godfrey, a longshoreman, was injured when a pre-slung load being unloaded from the M/V Baronia broke. Several steel pipes rolled onto and crushed his foot. He alleged that the M/V Baronia was negligent in failing to warn the off-loading stevedore that excess dunnage in the cargo, loaded by a foreign stevedore, presented a hazard. The district court granted summary judgment in favor of the defendants, holding that the defendants did not violate a duty to turn the vessel over in safe condition or to warn the stevedore of the excess dunnage in the cargo. We affirm.
 
 FACTS
 
 3
 The M/V Baronia was loaded with steel pipe by a foreign stevedore in Korea. The pipe was loaded into the cargo holds in pre-slung loads of separate bundles of three pipes. Considering the facts in the light most favorable to Godfrey, the foreign stevedore placed dunnage (loose timber used to support cargo) within the pre-slung loads of pipe. This is an unusual manner of stowage. Apparently, the loading was observed only by the ship's electrician.
 
 
 4
 After the M/V Baronia arrived in Los Angeles, the Metropolitan Stevedore Company began to unload the cargo. The superintendent of operations, the ship boss, and the hatch boss all testified that they reviewed safety concerns before unloading the cargo. The accident occurred on the dock on the fourth day of the unloading. It allegedly resulted from a piece of dunnage in the pre-slung load breaking loose and causing the pipe to roll forward.
 
 
 5
 Godfrey sued under 33 U.S.C. § 905(b) to recover for an injury "caused by the negligence of a vessel." He alleged that the M/V Baronia failed to meet its duties under Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156 (1981). Specifically, he maintained that the M/V Baronia violated its turnover duty of safe condition and its turnover duty to warn.
 
 
 6
 At an oral hearing the district court concluded that because the turnover duty of safe condition applies only to conditions on the ship or its equipment, the M/V Baronia was under no duty with respect to the manner in which the dunnage was placed in the cargo. The court found that the turnover duty to warn did not apply because the stevedores had actual knowledge of the excessive dunnage in the cargo. The court therefore granted summary judgment in favor of the defendants/appellees. We agree with the conclusions of the district court.
 
 DISCUSSION
 
 7
 We review a grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). "Summary judgment may be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no 'genuine issue as to material fact and the moving party is entitled to judgment as a matter of law.' " Martinez v. Korea Shipping Corp., 903 F.2d 606, 608 (9th Cir.1990) (quoting Fed.R.Civ.P. 56(c)).
 
 
 8
 An action for negligence is usually a mixed question of law and fact. Id. at 609. However, "[t]he existence and extent of a duty of care are questions of law." Id. Thus, although "[s]ummary judgment is rarely granted in negligence cases," Id., if the district court is correct that the M/V Baronia owed no duty of care, we must uphold the summary judgment. See Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1541-42 (9th Cir.1991).
 
 
 9
 I. The M/V Baronia Did Not Violate Its Turnover Duty of Safe Condition
 
 
 10
 The Supreme Court has held that under 33 U.S.C. § 905(b) a ship can be negligent for failing to "exercis[e] ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property." Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 167 (1981) (emphasis added). This is the so-called "turnover duty of safe condition." Bjaranson v. Botelho Shipping Corp., 873 F.2d 1204, 1207 (9th Cir.1989). This duty does not apply here because Godfrey is alleging that the condition of the cargo, not the ship or its equipment, was dangerous.
 
 
 11
 By its terms, the turnover duty of safe condition applies to the ship and its equipment only. We have always spoken of the duty to turnover "the ship and its equipment ... in a safe condition." Id. "The scope of the shipowner's duty as set forth in Scindia focuses on the character of the ship and its equipment--not on the nature of the cargo." Taylor v. Moram Agencies, 739 F.2d 1384, 1386 (9th Cir.1984). The Supreme Court limited the safe turnover duty "to the condition of the ship's gear, equipment, tools, and work space to be used in the stevedoring operations." Scindia, 451 U.S. at 167.
 
 
 12
 We will not stretch this duty to include a duty to turnover cargo in a condition that presents no risk that once upon the dock the cargo might cause an accident. In closely related contexts we have firmly limited the ship's duty to "the ship itself" or the "ship's 'gear.' " Carpenter v. Universal Star Shipping, S.A., 924 F.2d 1539, 1543 (9th Cir.1991).
 
 
 13
 We conclude that as a matter of law, because Godfrey does not allege that the ship or its equipment was unsafe, the M/V Baronia did not violate its turnover duty of safe condition.
 
 
 14
 II. The M/V Baronia Had No Duty To Warn About The Excess Dunnage
 
 
 15
 Godfrey also asserts that the M/V Baronia violated a duty to warn the stevedore of the excess dunnage within the pre-slung loads of pipe. A vessel has a duty to "warn[ ] the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work." Scindia, 451 U.S. at 167 (emphasis added). This duty to warn does not apply in this case because the danger here, the excess dunnage in the cargo, was not hidden or nonobvious and should have been anticipated by a competent stevedore.[1]
 
 
 16
 The duty to warn only applies to hidden or nonobvious dangers. Ludwig v. Pan Ocean Shipping Co., Ltd., 941 F.2d 849, 851 (9th Cir.1991); Bjaranson v. Botelho Shipping Corp., 873 F.2d 1204, 1208-09 (9th Cir.1989); Taylor v. Moram Agencies, 739 F.2d 1384, 1387 (9th Cir.1984); Turner v. Japan Lines, Ltd., 651 F.2d 1300, 1304 (9th Cir.1981), cert. denied, 459 U.S. 967 (1982), amended 707 F.2d 752 (1983). When a party moves for summary judgment and the nonmoving party bears the burden of proof on an issue, the nonmoving party must "make a sufficient showing to establish the existence" of a genuine factual issue. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). Godfrey has not met his burden of demonstrating a genuine issue of fact as to whether the danger from the excess dunnage was not known, and should not have been known, to the stevedore.
 
 
 17
 As noted above, the superintendent of operations, the ship boss, and the hatch boss all testified that they reviewed safety concerns before unloading the cargo. The superintendent testified at a deposition that he had seen the excess dunnage in the pre-slung pipe before the accident. The hatch boss stated that "it seems like there was quite a bit of dunnage on this particular job."
 
 
 18
 Godfrey contends that the deposition testimony refers to dunnage outside of the pre-slung pipe and that the dunnage within the pre-slung load could not be seen until it was already off the vessel. This response is not enough to establish a genuine issue of fact as to whether the danger was actually hidden and should not have been anticipated by the stevedore. First, even if the dunnage in the pre-slung loads could not be seen in the hold, for four days loads were removed from the vessel. Thus, the stevedore would have seen, and indeed guarded against, the risk from the dunnage in the cargo.
 
 
 19
 Furthermore, the evidence establishes that Metropolitan, as any reasonably competent stevedore would, anticipated the danger posed by excess dunnage. The hatch boss testified that in morning inspections he would "check the general condition of the ship" and for "excessive dunnage." The ship boss indicated that experienced longshoremen would recognize a hazard from excessive dunnage in a pre-slung load. The superintendent in his deposition acknowledged that prior to the accident he was aware of the hazard presented by the dunnage in the loads.
 
 
 20
 In Taylor, 739 F.2d 1386, a longshoreman was injured after he slipped on mung beans that had leaked from torn sacks being unloaded from a vessel. The court noted that it was not the condition of the cargo, but the stevedore's failure to take adequate precautions that created the danger. Id. The court upheld the trial court's finding that there was "no hidden danger of which the shipowner had a duty to warn in the face of the evidence here demonstrating that the stevedores were well aware of this particular problem." Id. at 1387. In Godfrey's case as well, there was not a hidden danger that the vessel had a duty to warn about.
 
 
 21
 In fact, this appeal closely resembles a case from the Eleventh Circuit, Spence v. Mariehamns R/S, 766 F.2d 1504, 1507 (11th Cir.1985). In Spence, rolls of paper were stored in the hold of a ship with a loose and unsecured top tier. Id. at 1507. The court held that, "The shipowner's duty to warn of unknown dangers was not triggered here because the uncontradicted evidence disclosed that the stevedore and the longshoreman knew of the danger posed by a loosened or unchocked rolling tier." Id. Similarly, the M/V Baronia had no duty to warn.
 
 
 22
 Godfrey relies on Turner v. Japan Lines, Ltd., 651 F.2d 1300, 1304 (9th Cir.1981), cert. denied, 459 U.S. 967 (1982), amended 707 F.2d 752 (1982), which found the vessel liable for failing to warn the off-loading stevedore of a danger created by the method of stow used by a foreign stevedore. In that case, however, the court carefully noted the "concealed dangerous conditions." Id. The court stated that the danger was "invisible to the off-loading longshoreman." Id. at 1302. The concealed nature of the danger distinguishes Turner.
 
 CONCLUSION
 
 23
 The ruling of the district court is AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Circuit Rule 3(f)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Circuit Rule 36-3
 
 
 [1]
 This is not to imply that Metropolitan Stevedore Co. was not competent. To the contrary, as explained, it seems apparent that Metropolitan did anticipate the danger