**Susie Ann SPENCE, Administratrix of the Estate of Roosevelt Franklin Spence, deceased, Plaintiff-Appellee,**

v.

**MARIEHAMNS R/S and Firma Gustav Erikson, Defendants-Appellants.**

Nos. 84–5141, 84–5183
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

July 29, 1985.

William C. Norwood, William B. Milliken, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Miami, Fla., for defendants-appellants.

William M. Alper, Greene & Cooper, Sharon L. Wolfe, Miami, Fla., for plaintiff-appellee.

Before VANCE, HENDERSON and CLARK, Circuit Judges.

PER CURIAM:

Mariehamns R/S and Firma Gustav Erikson, owners of the vessel M/V GREGERSO, appeal from a jury verdict in the United States District Court for the Southern District of Florida in favor of Susie Ann Spence, administratrix of the estate of Roosevelt Spence. We reverse.

During the period relevant to this suit, the vessel was under time charter to Consolidated Limited, which had the responsibility for hiring the stevedores. The ship carried cylindrical rolls of newsprint weighing approximately 1700 pounds, standing about five feet high and having a forty inch diameter. Aluminum Company of Canada, Ltd. (Alcan) supplied the loading stevedores in Port Alfred, Canada. The cargo was loaded in three layers. For the first and lowest layer, cylinders were placed on

end on the floor of the cargo holds. A second layer, also vertically arranged, was placed on boards resting on top of the first layer. Finally, because inadequate space remained for another vertical tier, the rest of the rolls were stored horizontally on top of the second layer. This "rolling tier" remained secure throughout the voyage to the Port of Miami, as a result of either chocking or of very tight packing.

Once in Miami, the vessel was unloaded by Canadian Gulf Line of Florida, Inc. "Headers" supervised the work done by gangs of longshoremen, among them Roosevelt Spence. The headers were in turn under the control of a stevedore superintendent, William Wright. Wright told the header of Spence's gang to discharge the whole rolling tier in their particular cargo hold before proceeding to remove the lower levels of newsprint rolls. Wright's purpose was to eliminate the dangerous possibility that after partial unloading a loosened cylinder on the highest tier could roll off and injure a worker at a lower level. Despite this instruction, the header had Spence and other longshoremen unload all three levels of cylinders which were immediately beneath the hatch to the compartment. A forklift was lowered into the cleared space, and the longshoremen began to widen the clearing by further removal of cylinders at all three levels. Wright returned and noted his directions had not been followed. He then told the header to make sure the remaining rolls in the horizontal tier were safely chocked. This instruction was also ignored. Soon afterward, a cylinder rolled off the top layer and crushed Spence's foot against the floor of the hold.

Spence's administratrix eventually sued the owners of the vessel, alleging that his injury resulted from their negligence. The jury agreed and returned a verdict for $60,000.00. The defendants' motion for judgment notwithstanding the verdict was denied on December 20, 1983, but the order was not docketed until February 17, 1984. R. Vol. 2 p. 218. The defendants filed a

notice of appeal on February 24, 1984, which this court docketed as No. 84–5141. Apparently fearful that this notice of appeal was untimely, the defendants filed in the district court on February 29, 1984, a motion to vacate the December 20, 1983 order and replace it with an identical order dated February 24, 1984. The district court granted this motion. A second notice of appeal was filed March 14, 1984, and was docketed in this court as No. 84–5183.

Realizing that the earlier notice of appeal was timely filed within thirty days of the date of the entry of the order, Fed.R. App.P. 4(a), the appellants now concede that No. 84–5183 should be dismissed because the district court lacked jurisdiction over their February 29, 1984 motion. Consequently, we dismiss that appeal.

■ Turning to the merits of No. 84–5141, the district court's denial of the motion for judgment n.o.v. is reversible only if, viewing all the evidence in the light most favorable to the non-movant, a court could conclude that the proof so strongly pointed in favor of the defendants that no reasonable jury could have arrived at a verdict for the plaintiff. *E.g., Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969).

In 1972 Congress amended the Longshoremen and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 905(b) (1978), to shield shipowners from strict liability for injuries suffered during loading activities. The amended legislation provided for liability against the owner only in the event of the owner's negligence or that of the crew of the vessel. Following the analysis suggested by the Supreme Court in *Scindia Steam Navigation Co., Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), this circuit developed two standards for shipowner negligence. *Hunter v. Reardon Smith Lines, Ltd.,* 719 F.2d 1108 (11th Cir.1983); *Lemon v. Bank Lines, Ltd.,* 656 F.2d 110 (5th Cir.1981); *Mallard v. Aluminum Co. of Canada, Ltd.,* 634 F.2d 236 (5th Cir.1981).[1]

---

**1.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as

At the outset of cargo operations, the shipowner's duty

extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

*Hunter,* 719 F.2d at 1110 (quoting *Scindia,* 451 U.S. at 166–67, 101 S.Ct. at 1622, 68 L.Ed.2d at 12).

■ Looking to the shipowner's first duty under this standard, we note that the plaintiff introduced no evidence that the storage of the paper in the hold affected the ability of an expert stevedore to discharge the cargo with reasonable safety. In fact, the GREGERSO had been safely discharged of similarly loaded newsprint many times. The shipowner's duty to warn of unknown dangers was not triggered here because the uncontradicted evidence disclosed that the stevedore and longshoremen knew of the danger posed by a loosened or unchocked rolling tier. The stevedore repeatedly directed that precautions be taken against just the sort of accident which befell Spence. Therefore, no reasonable jury could have concluded that the owners were liable because of the condition of the vessel at the onset of cargo operations.

■ Once the cargo unloading activities began, the shipowners' duties narrowed considerably. Absent contract provision, positive law or custom to the contrary, the crew is under no general duty to supervise the stevedoring or inspect for dangerous conditions that develop within the confines of the operations. *Hunter.*

To avoid the general rule, the plaintiff introduced at the trial the charter agreement, which stated in part, "Charterers to load, stow and discharge the cargo at their expense under the supervision of the Captain." The plaintiff argues that this clause constituted a special contractual promise by the shipowners to the charterer that the crew would take direct responsibility for supervising the discharge of cargo. The plain language of the quoted passage contains no such suggestion, however, and the plaintiff offered no further evidence of the parties' intent. Furthermore, the Second Circuit Court of Appeals construed the clause, which is standard in time charter agreements, as merely making "plain the [captain's] right to veto a plan that might imperil the seaworthiness of the vessel—not to impose on him a duty, as the owner's agent, to supervise the charterer's stow." *Nichimen Co., Inc. v. M.V. Farland,* 462 F.2d 319, 332 (2d Cir.1972). The phrase makes no mention of the longshoremen's safety, and the plaintiff has not presented any extrinsic proof that the parties meant to impose such a duty on the shipowner.

■ The plaintiff also seeks to come within the "custom" exception to the general rule. Cross-examination of the defendant's maritime expert revealed that the vessel's mate customarily can overrule unloading procedures which he believes would damage the vessel or cargo. Plaintiff's counsel continued:

Q. What about concern about the unloading stevedores? Is it not the main concern that the loading should not create a hazard for the unloading stevedores, isn't [the mate] concerned about that?

A. Well, he is concerned about it to the extent that he certainly doesn't want to have any longshoremen killed during the discharging operation. He has accepted the fact that they are qualified to do the work.

. . . . .

precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

Q. Are you suggesting ... that the mate is not supposed to worry about the unloading longshoremen, whether they are going to be safe, is that your concept of his responsibilities?

A. No, I am just saying basically ... you assume that someone who is doing the work knows what they are doing.

R.Vol. 4 pp. 167–68, 171. This testimony falls short of suggesting that the mate was by custom obligated to assure the safety of the longshoremen or inspect for dangers growing out of their work. Hence, the general rule applies and the defendants owed no duty to Spence during the discharge activities.

Because the plaintiff failed to introduce evidence of defendant's negligence prior to the commencement of the cargo operations, the jury's verdict finds no support in the record.

Accordingly, the judgment of the district court denying the defendants' motion for judgment notwithstanding the verdict is REVERSED.