Michael **RIGGS**, Plaintiff–Appellant,

v.

**SCINDIA STEAM NAVIGATION COMPA-NY** and the Shipping Corporation of India, Defendants–Appellees.

No. 92–55139.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 15, 1993.

Decided Nov. 8, 1993.

Marc Coleman, Middleton & Coleman, San Pedro, CA, for plaintiff-appellant.

Dawn Schock, Keesal, Young & Logan, Long Beach, CA, for defendants-appellees.

Before: WOOD, Jr.,* REINHARDT, and RYMER, Circuit Judges.

REINHARDT, Circuit Judge:

We decide here that longshoreworkers who are injured on board vessels while off-loading cargo stowed in an open and obviously hazardous manner by foreign stevedores may maintain negligence actions against the vessels. The district court reached a contrary conclusion. Accordingly, we reverse the grant of summary judgment to the vessel, and remand.

## I. *Background*

On October 2, 1989, Michael Riggs sustained injuries while working as a longshoreman for Stevedoring Services of America. Riggs and his longshore gang were assigned to unload cargo from the M/V Jalagopal. The Jalagopal was owned by Scindia Steam Navigation Company, Ltd. ("Scindia") and time-chartered by The Shipping Corporation of India ("SCI"). The vessel's cargo, which had been loaded overseas by a foreign stevedore, consisted of three-inch steel pipe tubing

---

\* Honorable Harlington Wood, Jr., Senior United States Circuit Judge, Seventh Circuit Court of Appeals, sitting by designation.

1. The pipes were stowed without dunnage (loose materials placed within the cargo to keep it from shifting) or shoring (vertical supports). .

2. As explained *infra,* section 5(b) of the LHWCA establishes the liability of "vessels" to injured longshoreworkers. Because a "vessel" includes

---

bundled together and covered with slippery plastic wrapping. There was uncontested evidence, including expert testimony, that the on-loading stevedore had improperly stowed the cargo and that the pipes were strewn throughout the hold in an openly and obviously hazardous manner.[1] Riggs injured his back when he slipped between two pipe bundles during the unloading operations.

Riggs brought suit against Scindia and SCI (collectively "the vessel")[2] under section 5(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. section 905(b), claiming that the owner and the time-charterer of the Jalagopal had negligently failed to provide him a reasonably safe place to work. Riggs contended that the vessel's negligence consisted of its failure to supervise properly the cargo loading operations of the foreign stevedore. The district court granted summary judgment to the vessel on the basis that it had no legal duty to prevent or alleviate the unsafe conditions in the cargo hold, because the dangers were open and obvious to the longshoreworkers. We have jurisdiction under 28 U.S.C. section 1291, and we review the grant of summary judgment *de novo.*

## II. *Legal Framework*

### A. *The 1972 Amendments to the LHWCA*

Prior to 1972, vessels were strictly liable under the maritime doctrine of unseaworthiness for any injuries sustained by longshoreworkers due to unsafe on-board conditions. Although absolutely liable to the injured longshoreworkers, vessels were able to shift the cost by suing the stevedore-employers on the theory that they had breached an expressed or implied warranty of workmanlike performance. Because this system resulted in much unnecessary litigation, Congress

---

its owner and charterer, both Scindia and SCI are potentially liable to Riggs. *See* 33 U.S.C. § 902(21); *see also Carpenter v. Universal Star Shipping, S.A.,* 924 F.2d 1539, 1542 (9th Cir. 1991) (same standards of care apply to shipowners and charterers). The question of any contractual indemnity between Scindia and SCI is not before us.

amended the LHWCA in 1972 in an attempt to bring it into conformity with the practical realities of the maritime world. *See* H.R. Report No. 1441, 92 Cong., 2d Sess., *reprinted in* 1972 U.S.C.C.A.N. 4698, 4702–04 (describing purpose of P.L. 92–576, Oct. 27, 1972, 86 Stat. 1251).[3]

■ The 1972 amendments gave longshoreworkers a no-fault workers-compensation remedy against their stevedore-employers. 33 U.S.C. § 904. The amendments abolished a vessel's absolute liability to an injured longshoreworker under the unseaworthiness doctrine, but retained a statutory action against vessels for *negligence*. § 905(b).[4] In addition, the amendments barred vessels from seeking indemnity from the longshoreworker's "employer". *Id.* However, an "employer" is defined in such a way as to exclude foreign stevedores. *See* § 902(4). Thus, by its terms section 905(b) does not prohibit a vessel from obtaining a recovery against a foreign on-loading stevedore and does not allocate liability between those two entities.

The House Report states that the result of the 1972 amendments would be "to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third-party damages action is concerned." 1972 U.S.C.C.A.N. at 4703. The Report concludes:

> Permitting actions against a vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate cor-

rective action where it knows or should have known about a dangerous condition. *Id.* at 4704. However, Congress did not specify the conditions under which a vessel could be liable for a breach of its duty of care, but instead left this task for the courts to resolve through the "application of accepted principles of tort law and the ordinary process of litigation." *Id.* The courts have proceeded to accept that responsibility, and this decision simply constitutes one further step in that process.

## B. A Vessel's Duties to a Longshoreworker

Any discussion of the scope of the duties imposed by section 905(b) must begin with *Scindia Steam Navigation Company, Ltd. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). In *De Los Santos,* a longshoreman was injured while loading cargo into the ship's hold. The cargo fell from a pallet suspended by a winch, which was part of the ship's gear. The winch's braking mechanism had allegedly been malfunctioning for two days prior to the accident. In defining the vessel's duty of reasonable care under the circumstances the Court drew a line between "turn over" duties, which arise before the vessel is turned over to the stevedore and its longshoreworkers, and the other duties that arise after the vessel is turned-over. The case before us involves only the first type of duty—that which arises prior to turn over.

*De Los Santos* determined that a vessel's turn over duties extend *at least* to: 1) having the ship, its equipment, gear and tools, and the work space to be used in stevedoring operations in such condition that an experienced stevedore can by exercising reasonable care carry on its cargo operations with rea-

---

3. The Senate Report, S. Report No. 1125, is identical in all relevant respects to the House Report.

4. That section provides:
   In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone else entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this section and the employer shall not be liable to the vessel for such dam-

ages directly or indirectly and any agreements or warranties to the contrary shall be void. ... The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.
Section 933 *inter alia* provides that in certain situations the stevedore-employer is assigned the longshoreworker's right to sue the vessel for compensation. *See Carpenter,* 924 F.2d at 1541–42.

sonable safety ("the turn over duty of safe condition"); and, 2) warning the stevedore of *hidden* dangers that are known to the vessel or should have been known to it in the exercise of reasonable care with respect to any hazards on the ship, in its equipment, gear or tools, or in the work space ("the turn over duty to warn"). 451 U.S. at 167, 101 S.Ct. at 1622; *Bjaranson v. Botelho Shipping Corp.,* 873 F.2d 1204, 1207 (9th Cir.1989). It is the first turn over duty (safe condition) that is at issue here.

Riggs contends that the turn over duty of safe condition extends to cargo hazards that exist at the time of turn over, both "open and obvious" and concealed. The vessel argues that under *De Los Santos* and the law of this circuit the turn over duty of safe condition extends only to the vessel and its equipment and not to its cargo at all.[5] The vessel is clearly wrong, at least in part. Ninth Circuit precedent squarely holds that the turn over duty of safe condition encompasses *concealed* hazards in cargo on-loaded by foreign stevedores. *Turner v. Japan Lines, Ltd.,* 651 F.2d 1300 (9th Cir.1981), *cert. denied,* 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982). Therefore, the only question for us to resolve is whether it extends to open and obvious defects in such cargo as well. We hold that it does.

### III. *Discussion*

#### A. *Turner v. Japan Lines Holds that the Turn Over Duty of Safe Condition Extends to Concealed Cargo Hazards Created by Foreign On–Loading Stevedores.*

In *Turner,* which was decided several months after *De Los Santos,* we rejected the

argument that a vessel's turn over duties do not extend to the cargo stow. *Turner* involved an off-loading longshoreworker who was injured when a stack of plywood collapsed beneath him. Expert testimony indicated that the plywood had been improperly stowed by the on-loading foreign stevedore. We held that the vessel could be sued for failing to "protect" the injured longshoreworker against concealed cargo dangers, created by a foreign on-loading stevedore, of which the vessel knew or should have known, and which the vessel could, in the exercise of reasonable care, have "corrected" or warned of.[6] *Id.,* 651 F.2d at 1304.

Our statement in *Turner* that a vessel has a duty to "correct" concealed dangers in the cargo before turning the vessel over to the off-loading stevedore makes clear that our decision there encompassed the turn over duty of safe condition as well as the turn over duty to warn. Moreover, we have subsequently described *Turner* as setting forth a vessel's duty "to make the ship safe for longshoremen before turning the ship over to the stevedore." *See Ollestad v. Greenville Steamship Corp.,* 738 F.2d 1049, 1052 & n. 2 (9th Cir.1984); *see also Martinez v. Korea Shipping Corp., Ltd.,* 903 F.2d 606, 610 n. 2 (9th Cir.1990) (citing *Turner* in the context of a discussion of the turn over duty of safe condition).

In the decision we review here, the district court correctly recognized that *Turner* addressed the turn over duty of safe condition but erroneously limited the *Turner* rule to *concealed* cargo defects. The district judge stated:

> While *Turner, supra,* involved liability created by a condition of the stow, the facts of

5. In discussing the scope of the turn over duties in *De Los Santos,* the Supreme Court explicitly stated that the duty to warn extends to the "work space" but also implied that the duty of safe condition does so as well. *See* 451 U.S. at 167, 101 S.Ct. at 1622. Several circuits have concluded that the duty of safe condition extends to the "work space", but there is some disagreement as to whether the cargo falls within the term "work space". *Compare Theriot v. Bay Drilling Corp.,* 783 F.2d 527, 535 (5th Cir.1986) (turn over duty of safe condition extends to ship's work space, which includes cargo) *with Kirsch v. Plovidba,* 971 F.2d 1026, 1031 n. 7 (3d Cir.1992) (turn over duty of safe condition applies to "physical work space" but not cargo). As explained in text, Ninth Circuit law is in accord with that of the Fifth Circuit.

6. Because the case before us, like *Turner,* involves a *foreign* on-loading stevedore, we have no occasion to decide, and express no opinion regarding, whether a vessel has a duty to correct or warn of dangers (whether concealed or open and obvious) created by a domestic on-loading stevedore who is not the employer of the off-loading longshoreworkers.

*Turner* involved a concealed defect and not an "open and obvious" one. Plaintiff has failed to cite any Ninth Circuit authority wherein the shipowner has been held liable for an unsafe condition of the cargo which was open and obvious to the longshoremen working the hold.

The district court was correct that there is no direct Ninth Circuit authority on point. Rather our decision is dictated by the logic of our precedents.

*Turner*'s holding that the turn over duties of safe-condition and warning encompass non-obvious dangerous conditions in stowed cargo rested on our conclusion that such a rule would further the Congressional goal of safety that underlies the LHWCA. 651 F.2d at 1304. We reasoned that neither the off-loading longshoreworker nor his stevedore-employer could exercise any control over the on-loading foreign stevedore. Only the vessel could do so, by choosing a reliable foreign stevedore, supervising its work when necessary, and correcting concealed dangers or warning the off-loading stevedore of them. *Id.* Moreover, we noted that in many cases, the injured worker could not sue the foreign stevedore, who would be beyond the reach of the processes of a federal district court. All of these factors are equally applicable in the case of an open and obvious cargo defect.[7]

We noted in *Turner* another factor that is also equally applicable to both types of *cargo defects.* We recognized that section 905(b) does not bar a shipowner from recovering against a foreign stevedore, who is not an "employer" within the meaning of the LHWCA, where the stevedore is primarily at fault for the off-loading longshoreworker's injuries. 651 F.2d at 1303–04. As we recently stated in *Carpenter v. Universal Star*

*Shipping SA,* where we reaffirmed our holding and reasoning in *Turner:* "The prospect of vessel-initiated actions against foreign stevedores provides foreign stevedores with an incentive to do their work carefully." 924 F.2d 1539, 1544 (9th Cir.1991).[8]

*Turner* and *Carpenter* are fully consistent with *De Los Santos. Turner* simply resolves an issue not before the Court in the earlier case and *Carpenter* endorses that action. Because the accident in *De Los Santos* occurred while the domestic stevedore was *loading* cargo onto the vessel and the alleged negligence pertained to the vessel's equipment, the Supreme Court simply had no reason to consider the scope of a vessel's turn over duties with respect to improperly stowed cargo, let alone cargo improperly stowed *before* stevedoring operations began.[9]

The vessel incorrectly asserts that *Taylor v. Moram Agencies,* 739 F.2d 1384 (9th Cir. 1984), holds that the turn over duty of safe condition does not extend to defects in the cargo. In *Taylor,* a longshoreman was injured when he fell while unloading mung beans. The bags containing the beans were torn, and as the longshoreworkers unloaded cargo, the beans blew onto the deck, eventually causing Taylor to fall. After a bench trial, judgment was entered for the vessel. The district court specifically found that the turn over duty of safe condition had *not been breached* because the stowage of the bags was not unreasonably dangerous. 739 F.2d at 1386. We affirmed.

The vessel misconstrues our statement in *Taylor* that the turn over duty of "safe condition focuses on the character of the ship and its equipment—not on the nature of the cargo", *id.,* as a holding that that duty does not

---

7. Because the injury in *Turner* was caused by a concealed cargo defect, there was simply no reason for us to discuss whether the same principle applies to open and obvious ones.

8. In *Carpenter* we described *Turner* as holding vessels liable for their failure to "intervene" to protect the longshoreworker. 924 F.2d at 1539. Our use of the term "intervene" in *Carpenter* is somewhat confusing because, the "duty to intervene" is technically a post-turn over duty, *see, e.g., Bjaranson,* 873 F.2d at 1207, and *Turner* involved a ship's duties at the time of turn over. Nevertheless, our intent to hold vessels liable for

their negligence in connection with the actions of foreign on-loading stevedores and our reasons for doing so are clear.

9. Moreover, *De Los Santos* was primarily concerned with a dangerous condition that *developed* during cargo operations *after* the stevedore had taken control. *See Ollestad,* 738 F.2d at 1052; *accord Kirsch v. Plovidba,* 971 F.2d 1026, 1029 (3d Cir.1992) (*De Los Santos* turns on duty of ship's crew to intervene after stevedore has begun cargo operations); *Harris v. Flota Mercante Grancolombiana, S.A.,* 730 F.2d 296, 298 (5th Cir.1984) (same).

apply to cargo defects. This sentence must be read in light of our conclusion that the cargo constituted a safe stow and did not become dangerous until hazardous conditions arose following the commencement of the off-loading stevedore's operations and the off-loading stevedore then acted unreasonably in the face of those conditions. If, as the vessel argues, the duty to turn over a vessel in safe condition does not include the cargo, then in *Taylor* we would not have determined that the cargo was not stored in a dangerous manner. We simply would have held that the vessel was immune as a matter of law from liability under a duty of safe condition theory because a cargo defect was the cause of the longshoreworker's injuries.

In *Taylor*, we concluded that the reason that the unloading longshoreman was not entitled to assert a claim against the ship-owner under the turn over duty of safe condition was because

> [t]he torn sacks of beans, lying in the hold posed no threat; it was only when the cargo discharge began and the wind blew the beans on the deck and winch platform that a hazardous condition developed. Thus, it was not the torn sacks but the stevedore's subsequent failure to take appropriate precautions in the course of the operation that created the danger.

*Id.*, 739 F.2d at 1386.[10] *Taylor* is clearly distinguishable from the present case because there the stevedore-employer's own subsequent negligence created the hazard; here, it is the vessel's and the foreign stevedore's that is allegedly the cause. For the purpose of the case before us, both parties agree that the off-loading stevedore was not negligent in performing its cargo operations. Because it is undisputed for purposes of this appeal that the cargo was stowed negligently before the vessel was turned over to the off-loading stevedore, *Turner* and not *Taylor* is controlling.

10. In *Taylor* we also rejected the longshoreworker's allegations that the vessel breached its post-turn over duties of intervention, active involvement, and control—duties not at issue here.

11. Fifth and Eleventh Circuit law is in accord with our own. E.g., *Lemon v. Bank Lines Ltd.*, 656 F.2d 110, 116 (5th Cir. Unit A. Sep. 1981);

## B. A Vessel is Not Relieved as a Matter of Law From its Duty to Turn Over a Safe Cargo Stow Merely Because The Hazardous Condition is Open and Obvious.

*Turner* establishes the proposition that the turn over duties of safe condition and of warning encompass *concealed* dangers in a cargo stow.[11] The remaining question is whether the fact that the defective condition of the cargo was open and obvious warrants a different result. The district court concluded that it did, and refused to allow Riggs' claim to go to trial. While Riggs agrees with the district judge that the turn over duty to *warn* applies only to hidden dangers, *see, e.g., De Los Santos*, 451 U.S. at 167, 101 S.Ct. at 1622; *Torres v. Johnson Lines*, 932 F.2d 748, 750 (9th Cir.1991), he contends that the court erred in holding that the turn over duty of *safe condition* is similarly restricted.

As we noted in our discussion of *Turner*, *supra* at 1445–46, *all* of the considerations on which we relied in holding that a vessel can be liable for concealed cargo defects are equally applicable in the case of open and obvious defects. The rationale underlying *Turner* simply does not permit the distinction suggested by the vessel. Moreover, we have explicitly held that the obviousness of a non-cargo defect does not absolve the vessel of its duty to turn over the ship in a safe condition—a condition under which expert and experienced stevedores can operate safely. *Martinez*, 903 F.2d at 609–10. In *Martinez*, we expressly held that an *open and obvious hazard* may be unreasonably dangerous and therefore constitute a breach of the turn over duty of safe condition. *Id.* In doing so we rejected the argument that the duty of safe condition does not extend as a matter of law to open and obvious defects—

*Spence v. Mariehamns R/S*, 766 F.2d 1504, 1507 (11th Cir.1985) (per curiam). The Third Circuit takes the contrary position. *Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490 (3rd Cir.1987) (rejecting *Turner*), *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988). We cited *Lemon* with approval in *Ollestad*, 738 F.2d at 1051.

at least insofar as the vessel and its equipment are concerned.[12]

The vessel argues that the rule set forth in *Martinez* is limited to the ship and its equipment and that the duty of safe condition does not apply to "open and obvious" defective cargo stows. We disagree. We can think of no sound reason for drawing such a distinction in the case of cargo stows only.[13] The sensible principle *Martinez* enunciates is that a vessel's failure to "correct" an open and obvious defect may constitute unreasonable conduct leading to the imposition of liability. That principle has equal force with respect to hazards in the stowage and hazards occurring elsewhere on the vessel. Moreover, given that under *Turner* vessels already have a duty to supervise the on-loading operations of foreign stevedores to avoid non-obvious cargo defects, there would seem to be little extra burden in requiring them to be alert at the same time to the creation of cargo hazards that are open and obvious.

■ The vessel suggests that in the case of obvious dangers the longshoreworkers have the opportunity to make a conscious decision to refuse to unload or bring the defects to the attention of the stevedore or vessel. However, this argument is foreclosed by the fact that neither assumption of the risk nor contributory negligence is a defense under the LHWCA. *De Los Santos*, 451 U.S. at 165 n. 13, 101 S.Ct. at 1621. As the *De Los Santos* Court stated, a vessel may not defend a suit brought against it under section 905(b) on the ground that the injured longshoreworker should have refused to continue working in the face of an obviously

dangerous condition. *Id.* at 176 n. 22, 101 S.Ct. at 1626 n. 22.

■ For the foregoing reasons, we hold that a vessel has a duty to take the necessary steps to protect longshoreworkers against open and obvious cargo defects and not just concealed ones.[14] Our holding is in accord with the law of the Fifth Circuit on this question. *Woods v. Sammisa Co. Ltd.*, 873 F.2d 842, 848, 850 (5th Cir.1989), *cert. denied*, 493 U.S. 1050, 110 S.Ct. 853, 107 L.Ed.2d 847 (1990); *Harris v. Flota Mercante Grancolombiana, S.A.*, 730 F.2d 296, 299–300 (5th Cir.1984). As noted earlier, the Third Circuit takes the position that the turn over duty of safe condition does not encompass *any* cargo-stow defects, whether hidden or obvious. No circuit, however, has adopted a rule similar to that urged by the vessel— that a duty exists as to concealed cargo defects but not as to open and obvious ones. We see no reason to create further confusion in this already complicated area of the law by drawing such an untenable and artificial distinction. Therefore, we join the Fifth Circuit in holding that the duty of safe turn over encompasses open and obvious, as well as concealed cargo hazards.

### IV. *Conclusion*

■ *Turner* holds that the turn over duty of safe condition extends to concealed cargo defects. *Martinez* holds that that duty applies to open and obvious equipment (and vessel) hazards, as well as to concealed ones. We now complete the circle. Taken togeth-

---

12. As we noted earlier, *De Los Santos* expressly limits the duty to warn to hidden defects but does not place a similar restriction on the duty of safe condition. *See* 451 U.S. at 167, 101 S.Ct. at 1622. Other courts have recognized this distinction and allowed for actions for injuries caused by open and obvious defects under the duty of safe condition but not under the duty to warn. See *Woods v. Sammisa Co. Ltd.*, 873 F.2d 842, 852 & n. 13 (5th Cir.1989), *cert. denied*, 493 U.S. 1050, 110 S.Ct. 853, 107 L.Ed.2d 847 (1990); *see also Spence v. Mariehamns R/S*, 766 F.2d 1504, 1507 (11th Cir.1985) (analyzing hidden versus obvious only as to the duty to warn).

13. While it is true that *Martinez* does not refer to cargo, there is no reason that it should have done so since the case involved a defective ladder.

14. Of course, a plaintiff in a particular case may fail to produce at trial sufficient evidence of an unreasonable danger to support a finding of a *breach* of the turn over duty. *See Ludwig v. Pan Ocean Shipping Co., Ltd.*, 941 F.2d 849, 851–52 (9th Cir.1991) (per curiam); *Bjaranson*, 873 F.2d at 1208–09. Because "certain dangers that may be hazardous to unskilled persons need not be remedied if an expert and experienced stevedore could safely work around them," *Torres*, 932 F.2d at 751 (internal quotation omitted), it may well be that a particular hazard that is open and obvious may not constitute an unreasonable danger to longshoreworkers. However, that factual issue is separate from the legal question whether there exists a duty to turn over a vessel that does not contain any unreasonably dangerous defects, cargo, or otherwise, open or concealed.

er, *Turner* and *Martinez* lead directly and inexorably to the conclusion that a vessel's turn over duty of safe condition extends to protecting against open and obvious cargo hazards. Accordingly, the judgment of the district court is **REVERSED** and the case **REMANDED** for further proceedings consistent with this opinion.[15]

**REVERSED and REMANDED.**

RYMER, Circuit Judge, concurring:

I concur because the reasoning of *Turner v. Japan Lines, Ltd.*, 651 F.2d 1300 (9th Cir.1981), *cert. denied*, 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982), which holds that a vessel has the duty to protect longshoremen against concealed conditions created by a foreign stevedore, which the vessel could have corrected or warned of, leads inexorably to the conclusion that the vessel has a duty of care with respect to cargo conditions whether the dangers are concealed or not. I write separately to note that until now, the turn over duty has focused on the character of the ship and its equipment, not on the condition of the cargo. *See, e.g., Ludwig v. Pan Ocean Shipping Co.*, 941 F.2d 849 (9th Cir.1991) (duty to have ship and its equipment safe for stevedore operations); *Taylor v. Moram Agencies*, 739 F.2d 1384 (9th Cir.1984) (vessel not liable for hazards which develop as a result of cargo operations). By the same token, the duty to warn has existed only with regard to hidden or concealed dangers. *Scindia Steam Navigation Co., Ltd. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981); *Turner*, 651 F.2d at 1304. By imposing a turn over duty of care to protect stevedores from poor cargo conditions, we are exposing the shipowner to liability equally for lack of reasonable care as to the vessel or the vessel's

equipment, and as to the condition of the cargo (at least when stowed by a foreign stevedore). It is unclear that this squares with the restrictive rules of liability of shipowners to stevedores envisioned by the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), or with the scope of a shipowner's duties recognized in *De Los Santos*. In any case, should *Turner* have led us astray, either the Congress or the Court can set us straight.[1]

**15.** The vessel argues that the award of summary judgment in its favor can be upheld on the basis that Riggs was hired to correct a dangerous stow and that under our decision in *Peters v. Titan Navigation Co.*, 857 F.2d 1342, 1344–45 (9th Cir.1988), a repairman has no right to recover for injuries caused by the very condition he was hired to fix. The district court properly rejected this theory under the facts of this case.

**1.** Our decision aligns the Ninth Circuit with the Fifth, but the Third Circuit is to the contrary. *Compare Lemon v. Bank Lines, Ltd.*, 656 F.2d 110

(5th Cir. Sept. 1981) (vessel liable for open and obvious defect in cargo storage) *with Derr v. Kawasaki Kisen K.K.*, 835 F.2d 490 (3d Cir.1987) (vessel not responsible for open and obvious cargo storage hazards created by foreign stevedore), *cert. denied*, 486 U.S. 1007, 108 S.Ct. 1733, 100 L.Ed.2d 196 (1988).